# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID GILLIS, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-17-1431 |
| OFFICER DRISCOLL,[1] *et al*. | * | |
| Defendants | * | |

## MEMORANDUM OPINION

In response to this civil rights complaint, Correctional Defendants Officer Christopher, Officer Driscoll, and Warden Ricky Foxwell, along with Medical Defendants Bruce Ford, PA and Wexford Health Sources, Inc., filed Motions to Dismiss or in the alternative for Summary Judgment. ECF Nos. 13, 22 & 29. The Court informed Plaintiff that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), failure to oppose Defendants' motion may result in dismissal of the Complaint. ECF Nos. 14, 23 and 30. Plaintiff has responded in part. ECF Nos. 17 & 18. The Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' motions, construed as Motions for Summary Judgment, shall be GRANTED.

## I. BACKGROUND

**A. Plaintiff's Claims**

Plaintiff David Gillis, an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services (DPSCS) and currently confined in the Eastern Correctional Institution (ECI), brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants denied him adequate medical care in violation of his right to be free from cruel and

---

[1] The Clerk shall amend the docket to reflect that the officer's correct name is "Driscoll," not Drisko.

unusual punishment under the Eighth Amendment of the United States Constitution. Plaintiff's claims center on the removal of a bullet from Plaintiff's upper right arm, as performed by Physician's Assistant Bruce Ford on April 12, 2017. ECF No. 1 at p. 3. Before the procedure, Plaintiff questioned whether it should be performed at an outside hospital. Ford advised Plaintiff that the procedure would be performed at ECI by Ford who had been in the medical field for years at ECI. Ford further reassured Plaintiff he was in good hands. *Id*.

According to Plaintiff, Ford first numbed Plaintiff's right arm above the elbow. For then used a surgical implement to cut into Plaintiff's arm and extract the bullet. ECF No. 1 at p. 3. Plaintiff avers that his arm began to bleed profusely and he grew worried. *Id*. Ford told Plaintiff that the bullet was stuck around a lot of cartilage and was not ready to come out. *Id*. Nevertheless Ford continued to cut deeper into Plaintiff's arm. *Id*. Plaintiff states that he advised Ford that he was experiencing excruciating pain and Ford administered additional medicine to further numb his arm. *Id*. Plaintiff alleges that "[Ford] continue[d] to damage the nerve in [Plaintiff's] right arm and cut [] away at the flesh trying to remove the bullet," showing "no concern for the damage he was causing." *Id*.

Once the bullet was removed, Plaintiff asserts that Ford failed to clean the incision before stitching the wound and failed to provide Plaintiff analgesic medication or antibiotics to prevent infection. *Id*. Plaintiff asserts that Ford examined the incision several days later and told Plaintiff that a knot which had formed at the surgical site is scar tissue and should go away over time. ECF No. 1 at p. 4. Plaintiff responded that previous bullet removals did not result in a knot forming and asked to be sent to an outside hospital. *Id*.

Plaintiff further asserts that as the anesthetic wore off, his arm began to hurt severely, and his hand ached when making a closed fist. ECF No. 1 at p. 3. As of May 11, 2017, Plaintiff

2

asserts that his right arm remains numb and that the knot at the incision site is still present. *Id*. at p. 4.  Additionally, Plaintiff claims that ECI failed to obtain his consent to perform the surgical procedure which is against ECI protocol. ECF 1 at p. 4.  In his Amended Complaint filed on November 15, 2017, Plaintiff names Wexford Health Sources and Warden Foxwell as additional Defendants (ECF No. 16 at p. 1) and asserts that medical providers denied him Gabapentin[2] and Ultram[3] for pain relief.  ECF No. 15 at p. 3.

**B.     Defendants' Response**

Defendants submitted for the Court's consideration Plaintiff's verified medical record, along with the declarations of Officer Driscoll, Officer Christopher and Warden Foxwell. Plaintiff, therefore, was on notice that the Court may treat the motions as ones for summary judgment; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).  Plaintiff does not challenge the authenticity, veracity or reliability of such records.  Nor does he object to the Court considering such records in connection with Defendants' summary judgment motions. The Court, therefore, will treat the Defendants motions as ones for summary judgment and will consider the record evidence summarized below.

Before the April 12, 2017 procedure, Plaintiff had seen Ford on two separate occasions for complaints of right elbow pain arising from a gunshot wound.  ECF No. 29-2 at pp. 2, 4. At both visits, Ford noted that that a bullet fragment appeared close to Plaintiff's skin surface and would schedule an in-house surgical procedure to remove it.  *Id*.  Ford also documented that he

---

[2]Gabapentin/Neurontin is an anti-seizure medication also used to treat neuropathic pain. *See* https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last visited August 20, 2018).

[3] Ultram/Tramadol is used to relieve moderate to moderately severe pain and is described as similar to an opioid analgesic. *See* https://www.webmd.com/drugs/2/drug-11276/ultram-oral/details (last visited August 20, 2018).

had discussed with Plaintiff the possible risks associated with the procedure, to include "bleeding, infection, scarring, [and] failure to remove." *Id*. Plaintiff had been issued active prescriptions for Amitriptyline Hcl[4] and Gabapentin at the time of his appointments with Ford. *Id*. at pp. 3, 5.

As to the procedure itself, the medical records reflect that on April 12, 2017, prior to the procedure, Plaintiff advised Ford that the fragment was causing him frequent pain. ECF No. 29-2 at p. 6. After Ford reviewed the risks associated with the procedure, the "site was prepped, lidocaine with epi [was] used, [and a] 2.5 cm incision was made." *Id*. Ford noted substantial scar tissue around the fragment, but observed no blood loss. *Id*. Three sutures were required to close the incision. *Id*. Plaintiff was directed to return in 10 days for suture removal. *Id*.

Plaintiff returned to Ford four days later, on April 21, 2017, complaining of a "hard nodule and pain at [the] site." ECF No. 29-2 at p. 8. Ford assured Plaintiff that while he likely would experience improvement over time, removal of the fragment would not necessarily resolve all past all past associated medical symptoms. *Id*. Ford documented that he observed no signs of infection and directed Plaintiff to return the following week for suture removal. *Id*.

On May 2, 2017, Nurse Nichole Frey removed the sutures. ECF No. 29-2 at p. 10. Frey described the wound was "well approximated" and healed with no signs of infection. *Id*. Plaintiff still maintained active prescriptions for Amitriptyline HCL and Gabapentin. *Id*. Plaintiff returned to Nurse Frey on May 17, 2017 with complaints of right elbow numbness and cramping. ECF No. 29-2 at p. 17. No swelling or infection was noted and Plaintiff was referred to the provider for further follow-up. *Id*. at p. 18.

---

[4] Amitriptyline HCL/Elavil is an antidepressant also used to treat Neuropathic pain. *See* https://www.webmd.com/drugs/2/drug-8611/amitriptyline-oral/details/list-conditions (last visited August 20, 2018).

Ford evaluated Plaintiff on June 2, 2017, for continued complaints of right elbow pain and numbness. ECF No. 29-2 at p. 14. Ford described the incision as well healed with no signs of infection. *Id*. Ford further noted superficial scar tissue but no pain associated with touching the site. Plaintiff's range of motion was described as intact with good strength. Ford reminded Plaintiff that removal of the fragment did not guarantee that his pain would be resolved. *Id*. Ford further advised Plaintiff that it would take several months to assess Plaintiff's long term improvement. *Id*. In addition to Plaintiff's prescriptions for Amitriptyline Hcl and Gabapentin, he was also prescribed Mobic[5] for 60 days. *Id*. at pp. 14-15.

On August 3, 2017, Plaintiff was examined by Paul Matera, M.D. in response to his administrative grievances related to the surgical procedure. ECF No. 29-2 at p. 16. Dr. Matera observed "some expected minimal local paresthesia near scar tissue right elbow" but no functional deficits. ECF 29-2 at p. 17. The records further reflect that Plaintiff had full range of motion and exhibited maximum grip strength (5/5). *Id*. at 16. Plaintiff also reported to Dr. Matera that the area was well healed, that his pain had improved, and that he was not experiencing any new, post-surgery pain. *Id*. Dr. Matera informed Plaintiff that "the local paresthesia [was] likely from the original bullet wound as [Plaintiff] admit[ted] he did have this before the procedure." *Id*. Dr. Matera also discussed with Plaintiff that he would recommend physical therapy to mobilize the area and to treat the superficial scar tissue, which Plaintiff agreed to try if approved. Plaintiff was on segregation at the time but was willing to engage in such therapy once he returned to general population because there he could receive the therapy in more regular intervals. *Id*.

---

[5] Mobic/Meloxicam is a nonsteroidal anti-inflammatory drug which reduces pain, swelling, and stiffness of the joints and is used to treat chronic conditions such as arthritis. https://www.webmd.com/drugs/2/drug-18173/mobic-oral/details (last visited August 20, 2018).

Throughout Plaintiff's procedures, Plaintiff had been transported to and from the medical department by Officers Driscoll and Christopher. Each attested that Plaintiff was transported in accordance with procedure and without incident. ECF No. 13-4, ¶¶5-6 (Christopher Decl.); ECF No. 13-5 at ¶¶5-6 (Driscoll Decl.). More particularly, neither Officer obstructed, hindered, or delayed Plaintiff's medical treatment, nor were they personally involved in providing any medical treatment. *Id*. at ¶¶7-8.

Similarly, Warden Foxwell attests that he is not a licensed medical provider and that ECI's medical services are provided by private medical contractors. ECF No. 22-2 at ¶ 2 (Foxwell Decl.). Foxwell further denies having any personal involvement in providing medical care to Plaintiff, and affirms that he had no authority to make decisions regarding Plaintiff's medical care or to direct the medical staff to provide treatment or perform any particular medical procedure. *Id*. at ¶ 6. Foxwell generally defers to the expertise of the trained medical staff to respond to medically related inmate complaints. *Id*. at ¶¶ 2 & 4. Foxwell also attests that did not obstruct, hinder, or delay the provision of Plaintiff's medical care. *Id*. at ¶ 5.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury

could believe it," the Court credits the record over the averred fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

### A. Officers Christopher and Driscoll

It is undisputed that Officers Christopher and Driscoll merely escorted Plaintiff to his medical appointment; they played no role in Plaintiff's medical care. An action for deprivation of constitutional rights brought pursuant to § 1983 shall lie only against those officials who "acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation, alteration, and internal quotation marks omitted). Indeed, Plaintiff has clarified that he did not intend to sue Officers Christopher and Driscoll. Thus, summary judgment is granted in the Officers' favor.

### B. Foxwell and Wexford Health Sources, Inc.

Similarly as to Foxwell, no record evidence demonstrates his personal involvement in the provision of Plaintiff's medical care. Further, Foxwell cannot be held liable for claims brought pursuant to § 1983 under the theory of respondeat superior. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Accordingly, supervisory liability under § 1983 will survive where evidence demonstrates: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's

7

response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). No such evidence exists as to Foxwell. Thus, summary judgment is granted in his favor.

As to Defendant Wexford Health Sources, Inc., it too is an institution whose liability, at best, is inferred under a respondeat superior theory. Viewing all evidence most favorably to Plaintiff, nothing establishes that Wexford Health Sources, Inc. exhibited the kind of deliberate indifference sufficient to extend liability to it under § 1983. Summary judgment is granted in Wexford's favor.

**C.     Bruce Ford**

As to Defendant Ford, the Court assumes for purposes of this decision that he is capable of suit as an official acting under color of law. However, when viewing the evidence most favorably to Plaintiff, summary judgment is nonetheless proper because Plaintiff cannot demonstrate that Ford's medical care amounted to an Eighth Amendment violation. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that defendant's acts or omissions amounted to deliberate indifference as to Plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence

will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff, aware of plaintiff's need for medical attention, failed to either provide such care or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Additionally, Plaintiff must demonstrate a defendant's "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

When viewing the record most favorably to Plaintiff, he cannot demonstrate that he received constitutionally inadequate care.  Before the April 12 procedure, Defendant Ford evaluated Plaintiff on two separate occasions, both times discussing with Plaintiff the risks of the surgical procedure to extract the bullet fragment.  Ford similarly discussed the possible risks and benefits of the procedure prior to removing the fragment.

Additionally, no evidence demonstrates that Ford was deliberately indifferent to Plaintiff's medical needs.  Ford successfully removed the fragment, disinfecting and numbing the area prior to the procedure.  Plaintiff was then seen several times after the procedure to address his remaining concerns and remove the sutures.  At each turn, no infection was noted and the incision was described as well healed.  Plaintiff also exhibited restored range of motion in his arm and full grip strength.  On this record, no evidence demonstrates that Ford was deliberately indifferent to Plaintiff's medical needs.  Rather, Ford evaluated Plaintiff, informed him of the risks associated with the procedure, successfully removed the bullet fragment, and provided follow-up care.

Plaintiff is also unable to demonstrate that he suffered harm as a result of Ford's acts or omissions.  Ford and Dr. Matera advised Plaintiff that removal of the bullet may not resolve all of his preexisting pain and numbness.  Plaintiff also admitted that the pain improved after the surgery.  Plaintiff does not point to anything that would demonstrate that any post-surgery discomfort was the result of Ford's deliberate indifference to Plaintiff's serious medical needs.  At best, Plaintiff disagrees with the course of care provided, but disagreement alone is insufficient to sustain the claim absent extraordinary circumstances not present here.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)).  Defendant Ford is therefore entitled to summary judgment in his favor.

## IV. CONCLUSION

Defendants' Motions for Summary Judgment are granted.[6] A separate Order follows.

   8/29/18                                                                 /S/
Date                                                                       Paula Xinis
                                                                             United States District Judge

---

[6] In light of the foregoing, the Court declines to address Defendants' alternative grounds for relief based on qualified immunity and failure to exhaust administrative remedies.